IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| THE LAURA CAMPBELL TRUST, : | |
|     Plaintiff : | |
| : | |
| v. : | CIVIL NO. AMD 05-885 |
| : | |
| JOHN HANCOCK LIFE INSURANCE : | |
| COMPANY (U.S.A.), : | |
|     Defendant : | |

...o0o...

MEMORANDUM OPINION

In this lawsuit, the Laura Campbell Trust[1] (the "Trust") seeks to recover the proceeds of a $750,000 life insurance policy. Defendant John Hancock Life Insurance Company ("the company") issued the policy on Dec. 26, 2002, to the insured, Dr. Joella Campbell.[2] After Dr. Campbell died, however, the company denied the claim, rescinded the policy and returned all premiums that had been paid. Consequently, the Trust filed this case for breach of contract in the Circuit Court for Baltimore County, from which defendant timely removed the case to this court.

Discovery having concluded, defendant now moves for summary judgment. The company has put forth the following arguments for denying the claim: (1) Dr. Campbell made a material misrepresentation in the insurance application and in doing so concealed the fact that she had been hospitalized with a serious medical condition; and (2) the policy never became effective because Dr. Campbell never fulfilled the condition precedent that there be

---

[1] The trust was created by Dr. Joella Campbell for her disabled daughter, Laura.

[2] The complaint was filed against Manufacturer's Life Insurance Company, which changed its name to John Hancock Life Insurance Company on Jan. 1, 2005.

no deterioration in her health between the date of the application and the delivery of the policy. The Trust refutes these assertions and argues that the insurer is precluded from denying coverage by the doctrine of equitable estoppel. No hearing is needed; the motion shall be granted for the reasons stated below.

I.

Dr. Campbell started looking into life insurance policies in Summer 2002, when she was 73 years old, so she could provide for her disabled daughter, Laura. She initiated the process through Keith Burgess, an appointed agent of the company's predecessor, Manufacturer's Life Insurance Company. As part of that process, Burgess arranged for Dr. Campbell to get a medical examination on July 18, 2002. She also agreed to make her medical records available to the insurance company. The examination and records review indicated that Dr. Campbell had myriad health problems, including gastroesophageal reflux disease, a benign goiter, arthritis of the hips, high cholesterol, cancer (which apparently had been treated with some success) and an abnormally high heart rate. Dr. Campbell filled out an application on Oct. 2, 2002.

While the October 2002 application was being considered by the underwriter, Dr. Campbell decided that it was in her best interest not to be the owner of the proposed policy. Instead, she and her attorney, Gary Aiken, Esq., established a trust with Aiken serving as the trustee and the Laura Campbell Trust as the beneficiary. Consequently, Dr. Campbell had to submit a new application.

The new application was dated November 21, 2002, and was signed by Dr. Campbell

with the agent, Burgess, as the witness. Of particular note here, Question 22 asked when the applicant last visited her regular doctor and the reason for the visit. Dr. Campbell answered that she had not seen her doctor in six months, when she went for a check-up. In reality, however, Dr. Campbell had been to see her doctor on November 19, 2002, as a follow-up to her October hospitalization for congestive heart failure, unresolved pneumonia and hypothyroidism. Nevertheless, the policy was issued on December 26, 2002, and the company delivered it to Dr. Campbell the next day.

Dr. Campbell died on March 21, 2004, of lung cancer with metastasis. A claim was filed with the company in June 2004. The company conducted a routine review. When it discovered that Dr. Campbell had falsely answered Question 22, the company denied the claim, rescinded the policy, and returned the premium payments (totaling $52,380).

II.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A fact is material for purposes of summary judgment, if, when applied to the substantive law, it affects the outcome of the litigation. *Id*. at 248. Summary judgment is also appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986); *Karim v. Staples, Inc.*, 210 F. Supp. 2d 737, 740 (D.Md. 2002).

III.

A.

The insurer argues that Dr. Campbell made a material misrepresentation when she stated in Question 22 of the insurance application that she had not visited her doctor in the prior six months. In fact, Dr. Campbell had visited her doctor two days prior to the date on the application as a follow-up to her then-undisclosed hospitalization.

Under Virginia law, an insurer seeking to void a policy because of a misrepresentation, must prove "(1) that the statement or omission on the application was untrue; and (2) that the insurance company's reliance on the false statement or omission was material to the company's decision to undertake the risk and issue the policy." *Montgomery Mutual Insurance Company v. Riddle*, 587 S.E.2d 513, 515 (Va. 2003); *See* VA. CODE ANN. § 38.2-309 (West 2005).

Although it would seem obvious that the disputed statement was not true, the Trust goes to great lengths to challenge this. The Trust argues that a genuine dispute of fact exists over whether (1) Dr. Campbell signed a blank document that was filled out later by Burgess; or (2) the application was completed and signed prior to the date of Dr. Campbell's undisclosed visit to her doctor. This effort ultimately fails, however, because the Trust has no probative evidence of these possibilities. What the Trust offers in this regard amounts to "propensity evidence" – that is, because in the past Burgess had Dr. Campbell sign blank

documents, or misdated forms, he is likely to have done the same in this instance.[3] Meanwhile, Burgess stated quite clearly in his deposition that, in fact, Dr. Campbell signed the completed application in his presence on November 21, 2002. *Burgess Depo. at 91*. There is no witness to contradict this. Accordingly, there exists no dispute of material fact as to whether the statement on the application was untrue.

As a matter of law, moreover, the information omitted by Dr. Campbell was material. "A fact is material to the risk to be assumed by an insurance company if the fact would reasonably influence the company's decision whether or not to issue a policy." *Harrell v. North Carolina Mutual Life Insurance Co.*, 213 S.E.2d 792, 794-95 (Va. 1975) (quoting *Mutual of Omaha Ins. Co. v. Echols' Adm'rs*, 154 S.E.2d 169, 172 (Va. 1967); *and see id*. at 794 (stating that materiality is a question of law for the court).

In the instant case, the company clearly states that it relied on the information from Question 22 in making its decision – and that if it had known the truthful answer, it would have denied coverage. *See Affidavit of Morag Baker*, assistant vice-president of underwriting, John Hancock Life Insurance.

The Trust strenuously argues that the Question 22 misrepresentation was immaterial. First, plaintiff argues that Morag Baker initially stated in her deposition that she was not aware if an underwriter had reviewed the second Campbell application. *See Baker Depo. at 123*. While this is true, Baker later stated in an appendix to her deposition that, after

---

[3] The Trust asserts, for example, that Burgess had Dr. Campbell sign a blank Health Care Questionnaire and Medical Certification forms. *Plaintiff's Response at 10.*

reviewing the "image file" she could confirm that it had been reviewed by an underwriter.

The Trust also argues that Question 22 was an optional question -- and for that reason it cannot possibly be material. This is factually correct in the sense that the application states, immediately above Question 22, "Complete only if Health Questionnaire NB3502 is NOT being submitted." Furthermore, Dr. Campbell did submit the specified questionnaire. However, the attached questionnaire was prepared for the October 2, 2002, application, and therefore it is reasonable that an underwriter would rely on Question 22 to update the file. This argument would be stronger, perhaps, if a questionnaire had been prepared specifically for the November 21 application. Regardless, the fact is that Dr. Campbell answered the question, and therefore it is reasonable that the company would rely on it. If, for example, Dr. Campbell had stated in the "optional" question that she had been diagnosed with brain cancer and had a week to live, that would have been material regardless of whether the question was optional or mandatory.

In making the above arguments about materiality, the Trust fails to address what ultimately should be the most important consideration in determining the materiality of Question 22. That is, what matters most is identification of *the information that should have been produced*. In other words, to show that Question 22 was immaterial, the Trust might have demonstrated that the medical ailments that the question would have brought to light likely would not have affected the decision of whether to issue the policy. Because Dr. Campbell was known to be in poor health from the outset, the Trust could have offered expert testimony that the additional ailments were insignificant. But, because the Trust fails

to do so, the court is not in a position to call onto question the company's assertion that it would not have issued the policy if it had known about Dr. Campbell's October hospitalization. *See Parkerson v. Federal Home Life Insurance Co.*, 797 F. Supp. 1308, 1315 (E.D.Va. 1992) (finding that an underwriter's affidavit was sufficient to prove materiality when plaintiff made no showing to rebut the assertions in the affidavit).

As a matter of law, therefore, the company has demonstrated that Dr. Campbell made a material misrepresentation on Question 22 of the application for the policy. Therefore, the company was justified in denying the claim on that ground.

B.

The company also contends that the insurance agreement was unenforceable because a condition precedent was not met. The condition was that Dr. Campbell's "insurability" did not diminish between the time of the application and the delivery of the policy. The November 21, 2002, application states:

> Insurance under any policy issued as a result of this application will not be effective, and no insurance shall be provided prior to the later dates the first premium is paid in full and the date the policy has been delivered provided that at the time of delivery there is no deterioration in the insurability of any person proposed for life insurance as stated in the application, since the date of the application.

Under Virginia law, "good health" provisions are generally valid. *Combs v. Equitable Life Ins. Co.*, 120 F.2d 432, 437 (4th Cir. 1941) (applying Virginia law); *Condon v. Inter-State Assurance Co.*, 850 F.2d 688 (4th Cir. 1988) (unpublished) (applying Virginia law); *Hayes v. Durham Life Insurance Co.*, 96 S.E.2d 109 (Va. 1957). And, as is the case with any contract, an insurance policy "should be construed 'according to the ordinary sense and

meaning of the terms employed, and, if they are clear and unambiguous, their terms are to be taken in the plain, ordinary and popular sense,'" *Combs*, 120 F.2d at 436 (quoting *St. Paul Fire & Marine Ins. Co. v. Ruddy*, 299 F.189, 193 (8th Cir. 1924)).

The Trust responds to the condition precedent argument several ways. Least persuasively, it argues that the font size of the provision in the policy was too small to be valid under Virginia law. VIRGINIA CODE ANN. § 38.2-311 (West 2005) (requiring at least 8-point font). To make its point, the plaintiff re-prints the clause in its response brief in an unusually small font. However, the font of the clause as printed by plaintiff is obviously smaller than the typeface used in the actual policy – which appears to be larger than 8-point font. Not only does this argument fail, but it is a deceptive tactic that lacks a factual foundation. *See* FED. R. CIV. P. 11(b)(3) (requiring that attorneys present information to the court only if "the allegations and other factual contentions have evidentiary support.").

The Trust also argues that the company is estopped from raising this defense to the contract because it failed to raise the same argument at the time it returned the premium payments. The Trust offers no case law to support such a theory. In any event, estoppel, or waiver, does not apply in this instance. The company is arguing that the contract was never formed because the condition precedent was never met. That being the case, it is unclear why the company would be bound to divulge *all* reasons why it thought the contract was invalid at the time when it returned the premium payments. Moreover, there does not appear to be an equitable justification for applying either a waiver or estoppel theory because the plaintiff was not harmed by the failure of the company to state its condition precedent

argument at the time it denied the claim.

Finally, plaintiff responds to the condition precedent argument by averring that there is a material factual dispute as to whether there actually was a change in Dr. Campbell's health *of which she was aware*.[4] The Trust argues that an alleged change of insurability "is a medical question and a matter of opinion" requiring expert testimony – and therefore it must be submitted to a jury. However, in *Gustafson v. Southland Life Insurance Co.*, 885 F. Supp. 854 (E.D.Va. 1995), the court considered the same issue and reached a contrary conclusion. In determining what constitutes a change in "health and insurability," that court looked to the health statement portion of the policy itself and concluded that any change in health that would require the applicant to change one of his answers would constitute a change. *Id*. at 859. In other words, if Dr. Campbell's condition deteriorated to the extent that she would have to answer any health question on her application differently from the way she originally answered it, that would constitute a "deterioration in insurability" as described in the policy. Certainly Question 22 would meet that criterion.

For the reasons above, the clause in the insurance application creating a condition precedent is valid and enforceable, and provides, under the circumstances here, an independent basis for rescission of the policy. None of the arguments offered by the Trust to avoid this conclusion is meritorious.

---

[4] The Trust argues that Dr. Campbell was unaware of her change in insurability. This argument is severely undermined by the fact that she was a doctor and therefore must have been aware of the significance of her hospitalization between policy applications.

C.

Lastly, the Trust asserts a theory of equitable estoppel that it says prevents the company from asserting its right to rescind the contract based on misrepresentation. The Trust argues, essentially, that Burgess filled out the November 21, 2002, application himself and that he knew he was submitting false information. Moreover, the Trust argues, Dr. Campbell was unaware of the misrepresentation. And, without much elaboration – and without documentation – the Trust asserts that "if she was told that the defendant would no longer insure her, she could have accepted the other pending offers which were extended to insure her." *Plaintiff's Response at 34*. This argument fails.

Under Virginia law, an insurer is estopped from seeking recission of a policy when (1) false answers contained in the application were actually written down by the insurer's agent; (2) these answers were truthfully given by the applicant without fraud or collusion; and (3) the applicant had no knowledge, actual or constructive, that his application contained false answers. *Breault v. Berkshire Life Insurance Co.*, 821 F. Supp. 410, 416 (E.D.Va. 1993).

Manifestly, the Trust fails to make a showing that Dr. Campbell did not sign the completed application on November 21, 2002, or that she signed it before it was filled out, thereby making her unaware that it contained false answers. Burgess, however, stated clearly in his deposition that Dr. Campbell went over the application with him on November 21 and then signed it. To get this issue before a jury, the Trust must put forth more than mere speculation.

The Trust mistakenly relies on *Parkerson v. Federal Home Life Ins. Co.*, 797 F. Supp. 1308 (E.D.Va 1992). In that case, the insurance agent testified that the insured had explicitly told him that he had been diagnosed with cancer, but the agent did not report it to the insurance company. *Parkerson* is thus distinguishable from the instant case and it does nothing to advance the Trust's argument. The Trust's equitable estoppel argument fails.

IV.

For the reasons stated herein, defendant's motion for summary judgment shall be granted. It is so ordered.

Filed: February 2, 2006                                     /s/
                                                ANDRE M. DAVIS
                                                UNITED STATES DISTRICT JUDGE